## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MARIA PUTNAM,                          Case No. 1:10-cv-569
     Plaintiff                          Spiegel, J.
                                        Litkovitz, M.J.

   vs

COMMISSIONER OF                        **REPORT AND**
SOCIAL SECURITY,                       **RECOMMENDATION**
    Defendant

     Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications

for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is

before the Court on plaintiff's Statement of Errors (Doc. 7), the Commissioner's response in

opposition (Doc. 11) and plaintiff's reply memorandum. (Doc. 12).

### PROCEDURAL BACKGROUND

     Plaintiff was born in 1961 and was 45 years old at the time of the decision of the

administrative law judge (ALJ). Plaintiff has a high school education and two years of post-high

school vocational schooling. Plaintiff has past relevant work experience as an insertion machine

operator, labeler, apparel retail clerk, general office clerk, and data entry clerk.

     Plaintiff filed applications for DIB and SSI on March 17, 2004, alleging a disability onset

date of March 1, 2004, due to seizures and back pain. (Tr. 54-56, 67, 283-85). Plaintiff's

applications were denied initially and upon reconsideration. Plaintiff requested and was granted

a de novo hearing before an ALJ. On April 17, 2007, plaintiff, who was represented by counsel,

appeared and testified at a hearing before ALJ David A. Redmond. (Tr. 295-326). Two other

individuals also appeared and testified at the hearing: a Medical Expert, Dr. Mary E. Buban, and a vocational expert (VE), Charlotta Ewers. The ALJ issued a decision denying plaintiff's DIB and SSI applications on October 26, 2007. (Tr. 9-26). Plaintiff's request for review was denied by the Appeals Council on June 17, 2010, making the decision of the ALJ the final administrative decision of the Commissioner. (Tr. 1-5).

## PLAINTIFF'S HEARING TESTIMONY

Plaintiff testified at the administrative hearing that she was born in the Philippines, she is divorced, and she lives in an apartment with her two dependent children and her mother. (Tr. 298-300). She has a driver's license and is able to drive. (Tr. 300). She attended six years of elementary school and four years of high school in the Philippines. (Tr. 300). In addition, she attended a 920-hour vocational program to learn word processing in the United States. (Tr. 313). She is right-handed. (Tr. 299). Plaintiff testified that she is unable to work because of back problems and an uncontrolled seizure disorder. (Tr. 302). Plaintiff testified that she also suffers from depression, which affects everything that she needs to do and makes her want to lie down and not do anything sometimes. (Tr. 303). She stated that she has had depression since 1997, but she "just ignored it." (Tr. 303). Plaintiff testified that her lumbar back and neck are very sore, and she complained of pain in her upper right shoulder. (Tr. 310, 315). She is most comfortable lying down with a heating pad on her back. (Tr. 314). She has trouble remaining in a seated position, and she can sit for only a few minutes before she needs to stand up. (Tr. 314). Walking a long way also causes problems. (Tr. 316).

Plaintiff has trouble sleeping because of stress about financial problems. (Tr. 312). On a typical day, she wakes up at 2:00 or 3:00 p.m., picks her children up from school, goes to

2

appointments, and takes her children to appointments. (Tr. 312-13). She testified that there have been times when she did not seek medical treatment or take prescribed medicine because she was unable to afford it. (Tr. 313-14). She testified that she had no insurance for almost three years. (Tr. 314). Plaintiff testified that she had four cortisone shots in her back in 2004, which made her feel great for one year, but she did not have any money to pay for the additional shots her doctor wanted her to receive. (Tr. 309).

Plaintiff testified that the medicine Naproxen, which she takes for back pain, makes her drowsy. (Tr. 315). She testified that she experiences occasional wheezing and breathing difficulties because of asthma. (Tr. 316). Plaintiff testified that she used to mop, vacuum, dust, take care of the garbage, take her children to the park, and go out with her friends, but she is no longer able to perform these activities. (Tr. 316-17).

### WITNESS TESTIMONY AT THE HEARING

Dr. Mary Buban, Psy.D., testified at the hearing. She agreed with the assessment of Dr. Kenneth Manges, Ph.D., who completed a "vocational examination" of plaintiff (Tr. 271-282), that plaintiff's psychological test results were not reflective of her abilities. (Tr. 306). Dr. Buban stated that plaintiff's post-high school level of education and the fact that she has maintained employment argue against the validity of the very low test scores Dr. Manges reported. (*Id.*). Dr. Buban questioned whether the scores were more reflective of plaintiff's failure to understand and comprehend the examiner and the exam materials than of her ability given that plaintiff is not a native of America and was educated in the Philippines. (*Id.*). Dr. Buban testified that Dr. Manges' diagnosis of adjustment disorder with mixed anxiety and depressed mood was the most accurate diagnosis based on the totality of the record. (Tr. 307). Dr. Buban questioned Dr.

3

Manges' diagnosis of bipolar disorder with psychotic features as that appeared nowhere else in the record and no treating sources hinted at anything more than a depressed condition; she rejected Dr. Manges' diagnosis of depressive personality disorder; and she characterized Dr. Manges' diagnosis of somatization disorder as tentative given that Dr. Manges based his opinion on the results of formal testing and plaintiff's degree of comprehension was not clear. (Tr. 306-07). Dr. Buban found Dr. Manges' report as a whole to be inconsistent with the preponderance of evidence in the record, and she determined based on plaintiff's testimony that psychological impairments did not limit plaintiff and preclude her from working. (Tr. 307). Dr. Buban concluded she would limit plaintiff's interactions with the public to casual interactions and that jobs with such a requirement would be consistent with plaintiff's previous work. (Tr. 308). Although Dr. Buban had testified there were no records of mental health treatment (Tr. 307), she acknowledged upon questioning by plaintiff's attorney that plaintiff had been prescribed antidepressants by her family doctor. (Tr. 308).

### THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ's hypothetical to the VE assumed an individual of plaintiff's age, education and work experience who is limited to activity at the light exertional level, except that she would be limited to lifting not more than ten pounds; she must be able to get off her feet for 15 minutes every hour to relieve discomfort; she would be restricted from unprotected heights, moving machinery, or other kinds of dangerous instrumentalities; and she would be limited to simple tasks requiring a minimal degree of personal contact in the workplace. (Tr. 321-322). The VE responded there would be approximately 22,000 jobs in the regional economy that fit the ALJ's hypothetical, including jobs as an electronics worker, mail clerk, warehouse checker, and small

4

parts assembler. (Tr. 322).

The ALJ gave the VE a second hypothetical which assumed that the individual with plaintiff's vocational profile would be limited to activity at the sedentary level; she would need the latitude to sit, stand, or change positions at will; she would be restricted from unprotected heights, moving machinery, or other kinds of dangerous instrumentalities; and she would be limited to simple tasks requiring a minimal degree of personal contact in the workplace. (*Id.*). The VE responded there would be approximately 4,500 jobs in the regional economy that fit this hypothetical and gave as examples jobs such as lens inserter, bench assembler, microfilm document preparer, and weight tester. (*Id.*). The VE testified that her testimony was consistent with the Dictionary of Occupational Titles (DOT). (*Id.*).

In response to questioning by plaintiff's counsel, the VE testified that neither plaintiff's English language abilities, nor her limited academic ability and basic skills referenced by Dr. Manges, would reduce the number of jobs the VE found plaintiff was able to perform under the hypotheticals posed by the ALJ. (Tr. 323). When asked whether a diagnosis of carpal tunnel syndrome and a marked limitation in handling imposed by plaintiff's treating physician would further reduce the number of jobs plaintiff could perform, the VE responded that the term "markedly" did not provide enough vocational information and more quantification was necessary in terms of how frequently the individual can use her hands for grasping, pinching, or manipulation such as fingering. (Tr. 324).

### THE ALJ'S DECISION

The ALJ determined that plaintiff met the insured status requirements of the Social Security Act through December 3, 2009. (Tr. 14). The ALJ found that plaintiff engaged in

5

substantial gainful activity through May 8, 2006, but she has not engaged in substantial gainful activity since May 9, 2006. (*Id.*). The ALJ determined that plaintiff has the following severe impairments: degenerative joint disease of the lumbar spine; mild mitral insufficiency; a seizure disorder; and an adjustment disorder. (Tr. 15).

The ALJ determined that plaintiff does not have an impairment or combination of impairments which meets or medically equals the severity of an impairment in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). The ALJ specifically determined that plaintiff is not limited in her ability to handle objects. (*Id.*) The ALJ also found that plaintiff's mental impairment does not meet or medically equal the criteria of Listings 12.04 or 12.05. (Tr. 17- 20). The ALJ determined that plaintiff has the residual functional capacity (RFC) for light work except that she would be limited to lifting no more than 10 pounds; she would need to be able to get off her feet for short periods of approximately 15 minutes every hour to relieve discomfort; she would be restricted from unprotected heights, moving machinery, or other kinds of dangerous instrumentalities; and she would be limited to simple tasks requiring a minimal degree of personal contact in the workplace. (Tr. 20).

In making his determination, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (Tr. 22). Specifically, the ALJ found the objective findings relating to plaintiff's physical impairments did not support an inability to sustain work activity on a consistent, full-time basis. (Tr. 22). First, the ALJ noted a lack of objective findings to show that plaintiff's seizure disorder is disabling. The ALJ found that brain MRI and EEG testing performed in 2002

6

was normal and plaintiff did not report further testing; physical examination did not reveal a focal deficit; and the record did not show that she suffers from frequent black-out spells. Accordingly, the ALJ found that plaintiff's seizures would only necessitate restricting her from exposure to all unprotected heights, moving machinery and other dangerous instrumentalities. (Tr. 22).

Second, the ALJ found that plaintiff's low back and cardiac impairments do not limit her from all work activity but can be accommodated by limiting her to light work with a 10-pound lifting restriction and the opportunity to briefly get off her feet during the workday. (Tr. 22). The ALJ noted that July 22, 2006 lumbar spine x-rays revealed only mild lower lumbar spondylosis with no other abnormalities, and physical examinations did not reveal evidence of neurological compromise at any time since the alleged disability onset date. (*Id.*). In addition, the ALJ found the RFC was consistent with the limitations imposed by Dr. Koles, who opined plaintiff could frequently lift 6 to 10 pounds; she could stand/walk up to 6 hours in an 8-hour workday; and she could sit for 4-6 hours in an 8-hour workday. (*Id.*).

The ALJ relied on Dr. Buban's assessment that plaintiff's mental impairment only limits her to simple jobs with a minimal degree of personal contact in the workplace. (*Id.*). The ALJ found that Dr. Buban reviewed the entire record and correctly noted that plaintiff experiences some degree of mental limitation, but her reported IQ scores were inconsistent with her educational history. (*Id.*). In addition, the ALJ rejected Dr. Manges' conclusion that plaintiff was disabled on the ground that substantial evidence of record does not support his conclusion. (Tr. 22). The ALJ found that plaintiff has no history of mental health treatment; there is no indication in the record that her treating family physician recommended formal mental health

7

treatment but instead only noted a depressed affect and prescribed an anti-depressant medication; although plaintiff testified that she lacks motivation and has felt depressed since 1997, she has successfully worked during the time period she allegedly was depressed; and Dr. James Rosenthal, Psy.D., the consultative examining psychologist, did not note any significant limitations in her ability to sustain work-related mental activities. (Tr. 22).

The ALJ concluded that plaintiff is not credible based on a lack of side effects from her medicine; her conservative care; the fact that she has engaged in substantial gainful activity during periods of alleged disability; the fact that she does not report any special measures to alleviate her pain; and her daily activities. (Tr. 23).

The ALJ gave significant weight to Dr. Buban's opinion because he determined she reviewed the entire record and her opinion is supported by the documentary evidence. The ALJ found her opinion to be generally consistent with that of Dr. Rosenthal, who noted very few functional limitations from a mental standpoint. (Tr. 219-222). The ALJ also agreed with Dr. Buban that Dr. Manges' opinion was inconsistent with the weight of the evidence. The ALJ found it was inconsistent for Dr. Manges to state that plaintiff's IQ scores were an accurate reflection of her intellectual potential when compared to English-speaking workers while also noting that she spoke fluent English; Dr. Manges appeared to base a large portion of his opinion on plaintiff's reported physical impairments, which was outside his area of expertise as a psychologist; and Dr. Manges based his opinion of plaintiff's employability on his "knowledge of the job market" without explaining what this entailed. The ALJ determined that the VE had greater expertise in this area and her opinion was entitled to greater weight. (Tr. 23-24).

The ALJ also gave significant weight to the opinion of Dr. Koles, except that the ALJ

8

found the postural limitations Dr. Koles imposed and her ultimate statement that plaintiff was not

employable were not supported by substantial evidence.  The ALJ found no objective or clinical

evidence to support a limitation against bending, repetitive foot movements, handling, pushing

and pulling objects, or reaching.  In addition, the ALJ found Dr. Koles' mental assessment was

generally consistent with only simple tasks with a minimal degree of personal contact in the

workplace.  (*Id.*).

The ALJ determined that plaintiff is unable to perform any past work.  (Tr. 24).  The ALJ

also found that plaintiff was a younger individual, age 42, on the alleged disability onset date; she

has at least a high school education; and she is able to communicate in English.  (*Id.*).  Using the

Medical-Vocational Guidelines (the grid) as a framework for decision-making, and relying on the

testimony of the VE, the ALJ determined there are a significant number of jobs in the national

economy plaintiff can perform.  (Tr. 24-25).  Accordingly, the ALJ concluded plaintiff has not

been under a disability as defined under the Social Security Act from March 17, 2004, through

the date of the ALJ's decision.  (Tr. 25-26).

## MEDICAL RECORD

The ALJ set forth the medical evidence in detail, and the Court will not summarize the

evidence in its totality here.  The Court will reference the medical evidence in the Report and

Recommendation where pertinent to the Court's analysis.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g).  The Court's sole function is to determine whether the record as a whole contains

9

substantial evidence to support the Commissioner's decision. The Commissioner's findings

stand if they are supported by "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing

*Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the

Commissioner's findings are supported by substantial evidence, the Court must consider the

record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for DIB, plaintiff must meet certain insured status requirements, be under age

65, file an application for such benefits, and be under a disability as defined by the Social

Security Act. 42 U.S.C. §§ 416(1), 423. Establishment of a disability is contingent upon two

findings. First, plaintiff must suffer from a medically determinable physical or mental

impairment that can be expected to result in death or that has lasted or can be expected to last for

a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the

impairments must render plaintiff unable to engage in the work previously performed or in any

other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible

individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is

dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

establish disability, plaintiff must demonstrate a medically determinable physical or mental

impairment that can be expected to last for a continuous period of not less than twelve months.

Plaintiff must also show that the impairment precludes performance of the work previously done,

or any other kind of substantial gainful employment that exists in the national economy. 20

C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments.  An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience.  *Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).  *See also Bowen v. Yuckert,* 482 U.S. 137 (1987).  If the individual does not have a severe impairment, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing, 20 C.F.R. Part 404, Subpart P, Appendix 1.  The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work.  20 C.F.R. § 404.1525(a).  Plaintiff's impairment need not precisely meet the criteria of the Listing in order to obtain benefits.  It is sufficient if the impairment is medically equivalent to one in the Listing.  20 C.F.R. § 404.1520(d).  To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment.  20 C.F.R. § 404.1526(a).  The decision is based solely on the medical evidence, which must be supported by medically acceptable clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1526(b).  If the impairment meets or equals any within the Listing, the Commissioner renders a finding of

11

disability without consideration of the individual's age, education, and work experience. 20 C.F.R. § 404.1520(d); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 528 (6th Cir. 1981). Fourth, if the individual's impairments do not meet or equal any in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1053 (6th Cir. 1983); *Kirk*, 667 F.2d at 529.

Plaintiff has the burden of proof at the first four steps of the sequential evaluation process. *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *Wilson*, 378 F.3d at 548. *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *Wilson*, 378 F.3d at

12

548.

A mental impairment may constitute a disability within the meaning of the Act. *See* 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The sequential evaluation analyses outlined in 20 C.F.R. §§ 416.920 and 416.924 apply to the evaluation of mental impairments. However, the regulations provide a special procedure for evaluating the severity of a mental impairment at steps two and three. 20 C.F.R. § 416.920a. At step two, the ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." *Rabbers v. Commissioner Social Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1520a(b)(1)). If so, the ALJ "must then rate the degree of functional limitation resulting from the impairment." *Id.* (citing 20 C.F.R. § 404.1520a(c)(3)).

The claimant's level of functional limitation is rated in four functional areas, commonly known as the "B criteria": 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. *Id.* (citing 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00 et seq.; *Craft v. Astrue,* 539 F.3d 668, 674 (7th Cir. 2008)). The degree of limitation in the first three functional areas is rated using the following five-point scale: None, mild, moderate, marked, and extreme. *Id.* (citing 20 C.F.R. § 404.1520a(c)(4)). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using a four-point scale: None, one or two, three, four or more. *Id.* If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id.* (citing § 404.1520a(d)(1)). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *Id.* (citing §

404.1520a(d)(2)).

At step three of the sequential evaluation, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id.* A claimant whose impairment meets the requirements of the Listing will be deemed conclusively disabled. *Id.* If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC before completing steps four and five of the sequential evaluation process. *Id.* (citing 20 C.F.R. § 404.1520a(d)(3)).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden of identifying other work the claimant can perform through reliance on a VE's testimony in response to a hypothetical question. *Felisky,* 35 F.3d at 1035-36. However, to constitute substantial evidence so as to satisfy the Commissioner's burden, the hypothetical question posed to the VE must accurately reflect the claimant's mental and physical limitations. *Ealy v. Commissioner of Soc. Sec.,* 594 F.3d 504, 516 (6th Cir. 2010). *See also Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 238 (6th Cir. 2002) (citing *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987).

## OPINION

Plaintiff alleges the following assignments of error in this case: (1) The conclusion that plaintiff does not experience any difficulty in her ability to handle objects is not supported by

substantial evidence; (2) the ALJ's characterization of plaintiff as able to perform a range of "light work" is not supported by substantial evidence; (3) the ALJ's decision fails to properly consider plaintiff's age; (4) the ALJ's decision improperly dismisses Dr. Manges' evaluation; and (5) the ALJ's opinion places too much weight on the opinion of the medical expert, Dr. Buban.

## I. The ALJ's conclusion as to plaintiff's ability to handle objects is not supported by substantial evidence.

Plaintiff claims that the ALJ's decision that she has no limitations in her ability to handle objects is not supported by substantial evidence. Plaintiff contends the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Koles, that she has marked limitations in pushing/pulling and handling. Plaintiff contends there is objective evidence to support these limitations.

The Commissioner argues that the ALJ's decision that plaintiff does not have a functional limitation as to handling is supported by substantial evidence. The Commissioner asserts that Dr. Koles' treatment notes document approximately five complaints of pain or tingling over a five-year period even though plaintiff saw Dr. Koles on many more occasions. (Doc. 11, citing Tr. 241-50). In addition, the Commissioner notes that plaintiff did not complain of limitations in her hands at any time during the administrative hearing. (*Id.*, citing Tr. 297-326).

At the ALJ hearing, counsel for plaintiff asked if the limitations of carpal tunnel syndrome and a marked limitation in handling would further reduce the number of jobs plaintiff could perform. (Tr. 324). The VE responded that the term "markedly" did not provide enough vocational information and she needed "more quantifying of how frequently the hands can be

15

used for grasping or pinching or manipulation such as fine fingering." (*Id.*).  Following the ALJ

hearing and before the ALJ rendered his decision, plaintiff submitted a letter to the ALJ dated

June 18, 2007, presenting an additional argument concerning her alleged limited ability to

handle. (Tr. 114-117).  Plaintiff stated that her treating physician, Dr. Koles, found she was

markedly limited in her ability to handle objects and she argued that this limitation would

preclude her from performing a significant number of jobs that exist in the national economy.

Plaintiff argued that although handling is one of the basic work activities listed under the Social

Security Regulations, *see* 20 C.F.R. 404.1521(b)(1), and all of the jobs identified by the VE

require handling, the VE testified that the term "handling" did not have vocational significance.

(Tr. 114-115).  Plaintiff claimed that because most work requires handling and she is markedly

limited in her ability to handle as found by Dr. Koles, she should be found disabled.  (Tr. 117).

The ALJ acknowledged in his decision that the jobs identified by the VE require at least

some degree of handling.  (Tr. 16).  The ALJ determined that plaintiff was not precluded from

performing such jobs based on a limitation in her ability to handle objects because substantial

evidence did not support a finding that plaintiff is limited in this regard.  (*Id.*).  The ALJ further

rejected plaintiff's argument presented post-hearing that she suffers from any such functional

impairment.  (*Id.*, citing Tr. 114-117).  First, the ALJ found that plaintiff did not testify to any

difficulty related to her ability to use her hands at the ALJ hearing.  Second, the ALJ determined

that the record does not show that there is a problem in this area.  The ALJ noted that while

plaintiff's treating physician, Dr. Koles, found that plaintiff was markedly limited in her ability to

handle, his finding was not supported by substantial evidence because there are no significant

and consistent findings in the record relating to a hand impairment.  Rather, Dr. Koles

16

documented only occasional complaints of left hand tenderness due to overuse, and there is no evidence these complaints continued once plaintiff stopped working in May of 2006. (Tr. 16).

As an initial matter, there is an issue as to what evidence can properly be considered part of the record for purposes of the substantial evidence review. Plaintiff claims that following the ALJ hearing, she submitted a fact sheet concerning carpal tunnel syndrome and a letter regarding trigger thumb to the Appeals Counsel. (Doc. 7 at 5). Plaintiff has attached these documents to her statement of errors. (Doc. 7, Atts. 1, 2). The Commissioner argues that the Court should not consider this evidence because it does not appear anywhere in the record and cannot be considered part of the record for purposes of the substantial evidence review. In reply, plaintiff claims that she would be satisfied if the Court remanded this case under Sentence Six of § 405(g)[1] based on new and material evidence. Plaintiff claims she had good cause for not submitting this evidence until her appeal to the Appeals Council because the ALJ's egregious failure to consider her handling limitation was not apparent until after he issued his decision.

When the Appeals Council declines review, it is the decision of the ALJ and therefore the facts before the ALJ that are subject to appellate review. *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). The Court may not consider new evidence presented to the Appeals Council in deciding whether to uphold, modify, or reverse the ALJ's decision. *Id*. at 696. *See also Cline v.*

---

[1]Sentence Six of § 405(g) provides in full:

The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

*Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996). "The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline*, 96 F.3d at 148. Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (citations and internal quotation marks omitted). To show "good cause," the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding. *Id.*

Assuming for purposes of this case that this information was before the Appeals Council when it declined to review the ALJ's decision, the Court is prohibited from considering this evidence in its substantial evidence review of the ALJ's decision. *Cotton*, 2 F.3d at 696. Although plaintiff contends she had good cause for not submitting this evidence prior to the date of the ALJ's decision in view of the "egregious nature" of that decision, plaintiff nevertheless fails to establish that the information she now proffers is new or that she could not have obtained it prior to the issuance of the ALJ's decision. Accordingly, the Court declines to recommend a Sentence Six remand on the basis of new and material evidence.

Turning to whether the ALJ erred by rejecting Dr. Koles' restriction on handling, it is well-established that the findings and opinions of treating physicians are entitled to substantial weight. If a treating physician's "opinion on the issue(s) of the nature and severity of [a

18

claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and [her] maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not give the treating source's opinion controlling weight, then the ALJ must consider a number of factors when deciding what weight to give the treating source's opinion. 20 C.F.R. § 404.1527(d). These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(3)-(6); *Wilson*, 378 F.3d at 544.

The ALJ stated that he gave significant weight to the opinion of Dr. Koles, plaintiff's treating physician, except as to her opinion on plaintiff's postural limitations and her ultimate opinion that plaintiff was not employable because he determined these opinions were not supported by substantial evidence.  (Tr. 23).  However, in determining that plaintiff did not suffer from a "severe" hand/wrist impairment (Tr. 16), the ALJ implicitly rejected Dr. Koles' opinion that plaintiff's ability to handle objects was markedly limited.  In making this finding, the ALJ noted that plaintiff's hearing testimony did not reflect any difficulty with her hands; Dr. Koles' treatment records documented only "occasional complaints of left hand tenderness due to overuse"; and plaintiff's complaints were not consistent and did not continue after she stopped working in May of 2006.  (Tr. 16).

A review of the record evidence shows, however, that the ALJ's assessment of Dr. Koles' treatment records is factually inaccurate.  Dr. Koles did not simply report left hand tenderness due to overuse.  She also diagnosed plaintiff with trigger thumb[2] (Tr. 242, 243) and reported the following symptoms and complaints in her treatment notes:

- On January 3, 2005, Dr. Koles observed swelling in plaintiff's left hand and reported plaintiff had pain upon flexion and extension.  She diagnosed left hand tendonitis with swelling due to overuse.  (Tr. 246).
- On November 3, 2005, Dr. Koles reported that plaintiff's left hand was swollen and painful.  She reported that plaintiff felt this was due to work, but plaintiff had not reported it due to the risk of losing her job.  (Tr. 247).
- On June 8, 2006, Dr. Koles diagnosed trigger thumb on the right and reported tenderness on the right radial side of the wrist.  (Tr. 243).
- On July 20, 2006, Dr. Koles indicated that plaintiff had pain in the right and left thumb; right trigger thumb; and tenderness over the wrist. (Tr. 242).
- In September 2006, plaintiff reported she had tingling in most of her hand.  (Tr. 241).

---

[2]Trigger thumb is a painful condition in which the thumb locks when it is flexed or extended. http://medical-dictionary.thefreedictionary.com/ (last accessed 9/12/11)

Contrary to the ALJ's findings, plaintiff's complaints of hand pain did not stop after she ceased work in May of 2006. Dr. Koles reported right and left thumb pain, wrist pain, tingling in the hand, and right trigger thumb in June, July and September of 2006. (Tr. 241-43). Dr. Koles provided an objective basis for plaintiff's symptoms by including findings of right trigger thumb and right carpal tunnel syndrome in the medical assessment she completed for the state agency after last examining plaintiff on September 12, 2006. (Tr. 239-240).

Thus, the ALJ's reasons for failing to assign any weight to Dr. Koles' opinion regarding plaintiff's handling restriction are factually incorrect and without substantial support in the record. Moreover, certain factors support affording Dr. Koles' opinion considerable weight. Dr. Koles treated plaintiff for nearly three years (Tr. 238), she has seen plaintiff on a consistent basis, and the record contains Dr. Koles' notes documenting her examinations and observations. Dr. Koles also provided an objective basis for plaintiff's handling impairment. Based on Dr. Koles' findings, the ALJ did not have a reasonable basis for concluding that plaintiff's hand/wrist impairment was not a severe impairment. *See Farris v. Sec'y of HHS,* 773 F.2d 85, 90 (6th Cir. 1985) (an impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience) (citation omitted). *See also Bowen v. Yuckert,* 482 U.S. 137 (1987). Accordingly, the ALJ's decision to reject Dr. Koles' handling restriction is not supported by substantial evidence. This error was not harmless as the VE's testimony fails to take into account any limitation plaintiff may have on her ability to handle objects. (Tr. 324).

## II. Plaintiff's second assignment of error is without merit.

Plaintiff claims the ALJ erred by finding she has the RFC to perform light work and by relying on vocational testimony based thereon. Plaintiff argues that by describing her as limited to lifting a maximum of 10 pounds with the need to be off her feet for 25% of every hour, the ALJ actually limited her to sedentary work. (Doc. 7 at 9-10).

The Commissioner acknowledges that a person must have the ability to do substantially all of the activities required for light work as defined under 20 C.F.R. § 404.1567(b) in order to be considered capable of performing "a full or wide range of light work." (Doc. 11 at 19). However, the Commissioner contends the ALJ did not find plaintiff could perform a full range of light work but instead restricted her to a limited range of light work with additional restrictions, including limitations on lifting and standing/walking. The Commissioner contends that the ALJ included these limitations in a hypothetical to the VE and properly relied on the vocational testimony in determining plaintiff could perform a significant number of jobs in the economy.

In reply, plaintiff claims that the ALJ erred by relying on the VE's response to the hypothetical on light work because there are no jobs at the light exertional level that are limited to lifting no more than 10 pounds; instead jobs that require lifting no more than 10 pounds are by definition sedentary jobs.

Plaintiff correctly states that under the Social Security Regulations, light work requires lifting no more than 20 pounds at a time. 20 C.F.R. § 404.1567. However, the ALJ did not find that plaintiff could perform a full range of light work. Instead, the ALJ determined plaintiff could perform a *limited* range of light work with a 10-pound lifting restriction and posed a hypothetical question to the VE which incorporated this restriction:

22

> [L]et's assume a person of Ms. Putnam's age, education, and work experience, and let's suppose that our hypothetical person would be limited basically to activity at the light exertional level, that within the other requirements of light exertion she would be limited to lifting not more than ten pounds, would need the latitude to get off her feet for short periods say fifteen minutes an hour to relieve discomfort . . . .  [C]an you identify any positions such a person might perform?

(Tr. 321-322).  The VE responded as follows:

> There are positions that meet your hypothetical.  Examples would include electronics workers, mail clerks, warehouse checkers, small parts assemblers. Jobs that would fit your hypothetical would number approximately 22,000.

(Tr. 322).  Accordingly, the ALJ did not err by characterizing plaintiff's RFC for "light work" with restrictions.

Plaintiff's second assignment of error also asserts that the ALJ erred by relying on vocational testimony that conflicted with the DOT.  Plaintiff argues that based on a review of the descriptions of the jobs identified by the VE in the DOT[3], it cannot be said that those jobs would never require lifting more than 10 pounds.  Rather, plaintiff notes that the DOT classifies as "light" three of the positions identified by the VE - Mail Clerk 209.687-026; Small Products Assembler 706.684-022; and Warehouse Checker 222.687-010.

"The ALJ may choose to rely on the VE's testimony in complex cases, given the VE's ability to tailor [his] finding to an 'individual's particular residual functional capacity.'" *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); SSR 00-4p).  Social Security Ruling 00-4p recognizes that a VE "may be able to provide more specific information about jobs or occupations than the DOT."  However, the Ruling also states that occupational testimony provided by a VE "generally should

---

[3] http://www.occupationalinfo.org/

be consistent with the occupational information supplied by the DOT." SSR 00-4p imposes the following duty on the ALJ in this regard:

> When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE . . . evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

In this case, the ALJ complied with his duties under SSR 00-4p by asking the VE if her testimony was consistent with the DOT. (Tr. 323). After the VE testified that it was, the ALJ turned the questioning over to plaintiff's counsel. (*Id.*). Plaintiff's counsel did not question the VE about any apparent inconsistencies between her testimony and the DOT, nor did counsel bring any potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert, and the ALJ had no affirmative duty under SSR 00-4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley v. Commissioner v. Social Sec.*, 560 F.3d 601, 606 (6th Cir. 2009) (citing *Martin v. Commissioner of Social Security*, 170 F. App'x 369, 374 (6th Cir. 2006) ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.")). Because the ALJ specifically asked the VE if her testimony was consistent with the DOT and the uncontradicted testimony of the vocational expert indicated that no conflict existed, the ALJ did not err by relying on such testimony in finding other jobs plaintiff could perform. *Id.*

24

Even if the ALJ erred in this regard, such error would be harmless. In response to the above hypothetical question, the VE identified an additional job plaintiff could perform–that of electronics worker–and plaintiff does not assert the existence of a conflict between the VE's testimony and the DOT with respect to this job. In addition, plaintiff does not challenge the consistency of the VE's testimony with the DOT as it relates to the 4,500 sedentary jobs identified. (Tr. 322-324).[4] Plaintiff's second assignment of error is without merit and should be overruled.

### III. Plaintiff's third assignment of error is without merit.

As her third assignment of error, plaintiff alleges that the ALJ failed to adequately apply the medical vocational guidelines (the "grid") based on her age. Plaintiff contends that although the ALJ's decision correctly notes that she was 42 years old on the alleged disability onset date and considered a "younger person" under the grids, she turned 45 years of age in December 2006, which is vocationally significant under the Social Security regulations. She contends that the ALJ's decision fails to mention that pursuant to 20 C.F.R. § 404.1563(c), in some circumstances individuals between the ages 45 and 49 are more limited in their ability to adjust to other work than younger individuals. However, plaintiff does not explain how the ALJ failed to comply with § 404.1563(c) or the impact of the regulation on her case. In any event, the ALJ used the grid as a "framework" for his decision and relied on vocational testimony to meet his burden at Step 5 of the sequential evaluation process. (Tr. 25). Therefore, plaintiff's third assignment of error should not be sustained.

---

[4]The Court notes that the hypothetical question may be nonetheless deficient because it failed to include a limitation on handling. *See Lancaster v. Commissioner of Social Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (a VE's testimony does not constitute substantial evidence if the hypothetical does not adequately describe the claimant's physical and mental limitations).

**IV. Plaintiff's fourth and fifth assignments of error should not be sustained.**

The Court will consider plaintiff's fourth and five assignments of error together as they are closely related. In each of these assignments of error, plaintiff claims that the ALJ gave an improper amount of weight to the opinions of the psychological experts.

The record includes the following psychological evidence: Dr. James J. Rosenthal, Psy.D., a consultative examining psychologist, performed a clinical interview of plaintiff on December 29, 2004. (Tr. 219-222). At the time, plaintiff was working four days a week through a temporary service. He reported that she spoke English reasonably well, although she sometimes had to be asked to repeat statements because of her accent. Plaintiff reported that she was never psychiatrically hospitalized but she saw a counselor for one to two years around 2002 because she was depressed secondary to her divorce. Plaintiff reported that she completed the equivalent of high school in the Philippines and two years of college and she studied to be a secretary. Plaintiff reported that she did housekeeping, laundry, cooking, and weekly shopping. She managed her own money and paid her own bills. She had some friends but did not talk to them often. She reported symptoms of depression with a depressed mood, low energy, and a sleep disturbance. She reported feeling overwhelmed with housing problems, bills, and the stress of life and caring for her children. She denied feeling useless or worthless or having any crying spells. Her thought content was appropriate; her thoughts were expressed in a logical and relevant manner; she showed no particular signs of anxiety or mania; her affect appeared a little depressed; and her effort and persistence on tasks was fairly good. On mental status examination, she was alert and oriented. Her attention and concentration were fair. Dr. Rosenthal assigned a GAF score of 65. He diagnosed plaintiff with an adjustment disorder with

26

depressed mood and mild psychosocial problems. Dr. Rosenthal opined that plaintiff's ability to

sustain attention and concentration to complete daily work tasks is not impaired and her ability to

tolerate the stress of day to day employment appears mildly impaired.

Cynthia Dyer, a Licensed Social Worker (LISW), conducted a clinical interview of

plaintiff on March 23, 2004, at the request of plaintiff's Vocational Rehabilitation Counselor.

She diagnosed major depression, an acculturation problem, and an occupational problem and

assigned a GAF score of 51. (Tr. 175-178).

Dr. Kenneth Manges, Ph.D., performed a vocational examination of plaintiff on October

6, 2006, "regarding her inability to work as a result of her medical and psychological

impairments." (Tr. 271- 282). Dr. Manges stated that plaintiff's conditions are "chronic seizure

disorder and psychological depression." (Tr. 271). Dr. Manges administered the Weschler Adult

Intelligence Scale-III (WAIS-III) to plaintiff. He reported scores of performance IQ 85; full-scale

IQ 74; and verbal IQ 67. (Tr. 276). He considered the results to be valid. Dr. Manges found

plaintiff's complaints and behaviors paralleled the following diagnoses: Bipolar Disorder

(mixed, with psychotic features); Somatization Disorder; and Adjustment Disorder with mixed

Anxiety and Depressed Mood. (Tr. 281). He opined the most probable DSM-IV diagnoses were

depressive personality disorder with self-defeating personality traits, paranoid personality

features, and negativistic (passive-aggressive) personality features. (Tr. 281). Dr. Manges

determined that plaintiff can no longer perform past work as a skilled data and word processor

operator because she has no transferability of skills due to her physical and psychological

difficulties. (Tr. 282). Dr. Manges found that as a consequence of her impairments, plaintiff is

unable to work in competitive employment on a full-time basis. Dr. Manges opined that because

27

of her emotional difficulties, she cannot attend or concentrate on a routine basis as would be expected in a workplace. Dr. Manges found that plaintiff cannot maintain the pace that would be expected in a work setting and she would be unable to complete a normal workday. Dr. Manges determined that "Based upon all the medical evidence, tests, interview and knowledge of the job market," plaintiff cannot engage in full-time remunerative employment. Dr. Manges found that plaintiff is limited as follows:

- Moderately limited ability to perform detailed or complex instructions
- Moderately limited ability to maintain attention and concentration for extended periods of time
- Markedly limited ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of periods of time away from work tasks
- Mild to moderately limited ability to interact with the public
- Mild to moderately limited ability to respond appropriately to criticism from supervisors

(Tr. 282).

The ALJ determined that plaintiff has mild restriction of daily activities due to her mental impairment; moderate difficulty in social functioning; and moderate difficulties in concentration, persistence or pace. (Tr. 18-19). The ALJ determined that neither the "paragraph B" nor the "paragraph C" criteria are satisfied. (Tr. 19). Further, the ALJ rejected plaintiff's IQ scores as invalid and he rejected the opinions of the LISW and Dr. Manges as inconsistent with the evidence of record. (Tr. 17, 20, 23). The ALJ accepted Dr. Buban's opinion that plaintiff retains the functional capacity to sustain simple tasks requiring a minimal degree of personal contact in the workplace and determined her opinion was generally consistent with that of Dr. Rosenthal. (Tr. 22).

Plaintiff contends that the ALJ erred by placing too much weight on the opinion of the medical expert, Dr. Buban, and by dismissing the psychological evaluation of Dr. Manges as

28

inconsistent with the weight of the evidence. (Tr. 23). Plaintiff argues that (1) Dr. Buban's opinion was not based on an actual observation of plaintiff; (2) her opinion was inconsistent with the treatment notes of plaintiff's treating physician, Dr. Koles, because Dr. Buban found plaintiff had received no mental health treatment, when in fact Dr. Koles prescribed plaintiff antidepressants in January 2004 and more recently (Tr. 109, 209); and (3) Dr. Buban indicated that her review of the file was not complete as she had just received the file that day. (Tr. 308). (Doc. 7 at 15-16).

Plaintiff further challenges the ALJ's determination that Dr. Manges' opinion was inconsistent with the weight of the evidence. First, plaintiff challenges the ALJ's finding of an inconsistency between Dr. Manges' statement that the low IQ scores he reported (verbal IQ 67, performance IQ 85, full-scale IQ 74) were an accurate reflection of plaintiff's intellectual potential when compared to English speaking workers and his observation that she speaks fluent English. (Tr. 18, 23). Plaintiff contends that it was Dr. Manges' opinion that even if her native language were English, her IQ scores would be lower than expected based on her education because of her depression. (Doc. 7 at 11). Plaintiff further argues that if the ALJ rejected plaintiff's IQ scores because of concerns about her English proficiency, this was in error because the Commissioner did not consider the impact of language proficiency on all of the evidence. Plaintiff points to other evidence in support of her contention that the IQ scores are valid. (Doc. 7 at 11-14).

Second, plaintiff argues that the ALJ erred by finding that the record does not demonstrate what Dr. Manges meant when he stated his opinion of plaintiff's unemployability is based on his "knowledge of the job market." (Tr. 23). Plaintiff asserts that Dr. Manges'

knowledge of the job market is apparent from the titles he holds, which he listed below his signature on his report, including "Diplomate, American Board of Vocational Experts," and "Diplomate, American Academy of Pain Management." (Tr. 282). Third, plaintiff contends that the ALJ erred by finding that Dr. Manges went beyond his expertise and based a large part of his opinion on plaintiff's reported physical impairments. (Doc. 7 at 15).

In addition, plaintiff asserts that the ALJ violated SSR 06-03p by discrediting the opinion of Cynthia Dyer, a licensed social worker, on the ground she is not a medical source and her opinion was inconsistent with the other psychological evidence of record. (Tr. 18). Plaintiff notes that Ms. Dyer conducted a clinical interview and evaluated plaintiff on March 23, 2004, assigning her a GAF of 51 and diagnosing her with a major depressive episode. (Tr. 177). Plaintiff contends that Ms. Dyer is arguably entitled to more weight than Dr. Rosenthal, the consultative examining psychologist, because she was counseling or treating plaintiff for depression and had observed her over a period of time. (Doc. 7 at 16-17).

As an initial matter, plaintiff has attached to her statement of errors a letter from Dr. Manges in which Dr. Manges addresses the concerns raised by the ALJ about Dr. Manges' evaluation in the hearing decision. (Doc. 7, Att. 3). Plaintiff asserts this evidence was presented to the Appeals Council. Although the administrative record does not reflect this evidence was before the Appeals Council, the Court may not consider the letter from Dr. Manges in any event because the Court is limited to the evidence before the ALJ in its substantial evidence review. *Cotton*, 2 F.3d at 696.[5]

Turning to the merits of plaintiff's fourth and fifth assignments of error, the ALJ's

---

[5]Plaintiff does not request a remand under Sentence Six of § 405(g) with respect to this evidence.

decision as to the weight to assign the psychological opinions of record is supported by substantial evidence. If a treating source's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). The opinion of a non-treating but examining source is entitled to less weight than the opinion of a treating source, but is generally entitled to more weight than the opinion of a source who has not examined the claimant. *Ealy v. Commissioner of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(1); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)). The weight to be afforded the opinion of a non-examining source depends on the degree to which the source provides supporting explanations for his opinions and the degree to which his opinion considers all of the pertinent evidence in the record, including the opinions of treating and other examining sources. 20 C.F.R. § 404.1527(d)(3).

There is no opinion from a treating psychologist in this case. Nor is there any evidence in the record that plaintiff ever received treatment from a psychologist. Thus, no opinion provided by a psychologist in this case is entitled to controlling weight. Moreover, while the opinion of Dr. Manges, who examined plaintiff one time, would ordinarily be entitled to greater weight than the opinion of Dr. Buban, who never examined plaintiff, the ALJ gave specific and valid reasons for giving significant weight to the opinion of Dr. Buban and rejecting Dr. Manges' opinion.

In making this determination, the ALJ reasonably found that Dr. Manges' opinion was not consistent with the weight of the evidence. (Tr. 23). The ALJ considered the consistency of Dr.

31

Manges' opinion with the other evidence of record; the internal consistency of Dr. Manges'
report; Dr. Manges' specialty in rendering his opinion on areas outside of his expertise; and the
supportability of Dr. Manges' professed vocational knowledge.

First, in giving more weight to the opinion of Dr. Buban over Dr. Manges, the ALJ noted
that Dr. Buban reviewed the entire record and that her opinion was well-supported by the
documentary evidence. While plaintiff alleges that Dr. Buban suggested at the hearing that her
review of the record was not complete (Doc. 7 at 16), the record does not reflect that Dr. Buban
did not review the entire file. (Tr. 308). Moreover, although plaintiff suggests that Dr. Buban
erroneously testified that plaintiff had not received any mental health treatment despite the fact
that she had been prescribed medication, Dr. Buban did in fact acknowledge that plaintiff's family
physician had prescribed an antidepressant for her. (Tr. 308). In addition, the ALJ found that Dr.
Buban's opinion was consistent with the report of the consultative examining psychologist, Dr.
Rosenthal, who, in contrast to Dr. Manges, noted very few functional limitations from a mental
standpoint. (Tr. 23). The ALJ's decision in this regard is supported by substantial evidence.

Second, The ALJ determined that Dr. Manges' report contained was internally
inconsistent. (Tr. 23). Dr. Manges' stated that plaintiff's low IQ scores were an accurate
reflection of plaintiff's intellectual potential when compared to English speaking workers. (Tr.
277). Yet, he also observed that plaintiff "is fluent in English." (Tr. 271). While not explicit, it
appears the ALJ viewed Dr. Manges' comments regarding plaintiff's test results to mean that
plaintiff performed lower than expected because of her lack of English proficiency. The ALJ
found those comments to be inconsistent with Dr. Manges' report that plaintiff is fluent in
English.

In challenging this finding, plaintiff relies on a letter from Dr. Manges further explaining his findings (Doc. 7, Att. 3), evidence that was not before the ALJ but rather presented to the Appeals Council. As noted above, this Court is prohibited from considering evidence that was not before the ALJ in determining whether the ALJ's decision is supported by substantial evidence. *Cotton*, 2 F.3d at 696.

Plaintiff also suggests that plaintiff was in need of an interpreter as English was not her native language and that the Commissioner failed to accommodate this need. (Doc. 7 at 12-13). Yet, none of the examining or reviewing physicians or psychologists, including Dr. Manges, indicated plaintiff needed an interpreter to assist with understanding or communication.[6]

Plaintiff also asserts the ALJ erred by dismissing one piece of evidence that is favorable to plaintiff because of concerns with her English proficiency without considering the impact of language proficiency on all the evidence. (Doc. 7 at 13). However, this misconstrues the nature of the ALJ's reason for discounting Dr. Manges' opinion. The ALJ was not discounting the opinion based on any alleged deficits in plaintiff's language proficiency, but rather on what the ALJ perceived was an internal inconsistency within Dr. Manges' report. The ALJ was entitled to rely on the internal inconsistency of Dr. Manges' report in assessing the weight to accord his opinion. *See* 20 C.F.R. § 404.1527(c)(2) ("If any . . . medical opinion(s) is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence . . . ."); § 404.1527(d)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The ALJ's finding is not a substantive decision on plaintiff's

---

[6]Dr. Rosenthal noted plaintiff was able to speak English "reasonably well," although at times she was asked to repeat statements because it was difficult to understand her accent. (Tr. 219). The only deficit noted by Ms. Dyer was "articulation was difficult due to cultural differences." (Tr. 176). Neither gave any indication that plaintiff had difficulties with understanding.

33

language proficiency and communication abilities, but rather a comment on the internal consistency of Dr. Manges' report.

Third, the ALJ noted that Dr. Manges based his opinion in part on plaintiff's physical impairments, an area in which he as a psychologist has no expertise. (Tr. 23). *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Dr. Manges noted plaintiff's physical condition throughout his report and reviewed plaintiff's medical records relating to her physical condition before rendering his opinion. (Tr. 272, 274-75, 281-82). The ALJ was justified in finding that Dr. Manges, as a psychologist, was not qualified to base his findings on evidence of plaintiff's physical impairments and in giving reduced weight to Dr. Manges' opinion on this basis.

Fourth, the ALJ discounted Dr. Manges' opinion on plaintiff's employability because Dr. Manges failed to explain his opinion in terms of concrete evidence. (Tr. 23). The ALJ noted that Dr. Manges relied on his "knowledge of the job market," a phrase which was not defined in the record and which added no credibility to his opinion, particularly when contrasted to the specific knowledge and testimony of the VE. (Tr. 23). The ALJ reasonably determined that Dr. Manges' vague reference to his "knowledge of the job market" was insufficient to establish his basis for determining that plaintiff could not engage in full-time remunerative employment.

Finally, plaintiff has not shown that the ALJ violated SSR 06-03p by discrediting the opinion of Ms. Dyer, the licensed social worker, because she is not a medical source and her opinion was inconsistent with the other psychological evidence of record. (Tr. 18). The Social Security rulings and regulations provide that a licensed social worker such as Ms. Dyer may

34

provide insight into the severity of the impairment and how it affects the individual's ability to function, *see* 20 C.F.R. § 404.1513(d), and it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. *See* SSR 06-03p. However, SSR 06-03p recognizes that evidence from an "acceptable medical source" is required to establish the existence of a medically determinable impairment.

Ms. Dyer is not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a). Nor is there evidence in the record showing that Ms. Dyer had ever seen plaintiff prior to the date of her evaluation. While Ms. Dyer's opinion may have been consistent with Dr. Manges' opinion, the ALJ was entitled to reject Ms. Dyer's opinion for the same reasons he rejected Dr. Manges' opinion. Thus, the ALJ did not err by declining to adopt the opinion of Ms. Dyer as to the severity of plaintiff's condition.

Even where substantial evidence would support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if supported by substantial evidence. *See Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999). Here, the ALJ thoroughly reviewed the psychological evidence of record. The ALJ gave specific and valid reasons for assigning the weight he gave to the opinions of each of the psychologists and other medical sources regarding plaintiff's mental impairment. The ALJ's decision to give significant weight to the opinion of Dr. Buban is supported by substantial evidence and should be upheld.

35

## CONCLUSION

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043, 1990 WL 94 (6th Cir. Jan. 2, 1990). Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id*. The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Id. See also Felisky*, 35 F.3d at 1041; *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985).

As related to plaintiff's first assignment of error, the Court finds that a remand is warranted in this case because all essential factual issues have not been resolved in this matter, and the current record does not adequately establish plaintiff's entitlement to benefits as of her

36

alleged onset date. *See Faucher*, 17 F.3d at 176. Further factual development of the record is necessary as to plaintiff's hand/wrist impairments and the functional limitations those impairments may impose.

## IT IS THEREFORE RECOMMENDED THAT:

This case be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 9/16/2011

Karen L. Litkovitz
United States Magistrate Judge

37

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MARIA PUTNAM,                                        Case No. 1:10-cv-569
        Plaintiff                                    Spiegel, J.
                                                     Litkovitz, M.J.

        vs

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

38